Good morning, Your Honors. Mark Vanderhout, along with Beth Kleinberg and Stacey Toulton from my office on behalf of the appellants, Jose and Alma Bustamante, and Mrs. Bustamante is present in court today, and I'd like to reserve five minutes for rebuttal. The central issue in this case is whether a United States citizen can have access to the federal courts of this country when she claims that her husband and the father of her children was unlawfully denied an immigrant visa by a corrupt consular official on a wholly fabricated drug trafficking allegation because he refused to become an informant for the DEA. Even to this date, there has been no factual basis provided to any of the appellants or to any court to support this denial. What requires them to do that? Well, Your Honor, we think due process does require them to do that. Can you be a little more specific? I mean, is there any case that says they have to give you their record or anything of that sort? Once, well, it's limited to these situations, and I would like to explain, Your Honor. It's limited to a situation where there's a constitutional right implicated. Granted. By the plaintiff. Got you. And there's a... They gave you a statutory basis to deny the visa. They did. And they told you also not only that, but their notion that he's involved in drugs didn't just come to them in a dream. They received that information from the head of the DEA in Mexico. There was no information presented whatsoever besides the actual statement. And, matter of fact, the decisions never even presented... Well, you presented the court with a letter from the consulate that says this is why we are denying the visa. Correct. Okay. Why isn't that adequate? Because what Kleining says, and Abourezk, and Allende, and all the cases that examine this, that once a constitutional right is implicated by a United States citizen, and here there is the right to marital association, certainly, and the right to due process, once those, there is a constitutional right implicated, then the court has to conduct a factual inquiry, limited, limited, facially legitimate and bona fide as to whether or not the reasons given are factual. Facially legitimate, we check that box off because they cite a statute. Checked off. Bona fide, they say we have information from the DEA that says he's a drug dealer. And, well, first of all, they have not presented that whatsoever. They didn't present the evidence. They presented... Their reason. What Judge Silverman is referring to is in this letter, it says that they have a letter from March 5th, 2003 from the resident agent in charge. The letter contains derogatory information regarding Mr. Bustamante to support the finding. So they claim they have something. They do claim they have something. That is correct, Your Honor. They do claim that. They actually claim that that was presented to the Petitioner's or the Appellant's counsel, but that's not... He is saying that's not true and there's no evidence in the record that that was. So... And that was certainly not presented to the court. So what we're limited with right now is a statement that the consular officer, quote-unquote, has reason to believe is a drug trafficker, and that he says that he got that information from a DEA agent. The actual decision was never presented, just that letter saying I have such information. But that is not sufficient under Kleindienst, under Avarice. Where does it say in Kleindienst they have to give you the police reports or their wiretaps or whatever else they have? There has to be an inquiry, an evidentiary hearing, evidence presented in court, and it has to be bona fide. In other words, it can't just be a statement that we think you're in national security, as Avarice addresses it. No, they said that's why we have DEA agents in Mexico. The DEA agent says we think he's involved in drugs. That's why we're turning down the visa. Well, let's say, Your Honor, an example would be a U.S. citizen's wife goes in for a consular appointment, and the consular official says, you know what? I want to have sex with you. And if you don't, I'm going to say that I have reason to believe that you're a drug trafficker, so you better have sex with me. She says forget it. She walks out and she tells her husband this. And next thing we know, there's a denial. Reason to believe, drug trafficker. No evidence whatsoever is ever presented to any court. So just to be specific, the problem is that your claim standing alone could lead to the conclusion that any time there's a denial on something that has a factual basis, the spouse who made the application can ask, go to court and ask for the evidence underlying it. And I gather that your limiting factor on that, your answer to why that wouldn't be so, is that the additional fact we have here is that they asked him to be an undercover agent?  And it would be like, or they asked him to be. In other words, she has some basis for alleging that it wasn't bona fide. Absolutely. It's the same as if the officer asked her to sleep with him or pay me a bribe. Well, they asked him to be an informant. That's not asking anybody to do anything illegal. It's asking for information, isn't it? Well. What's wrong with asking him to provide information? Well, there may be nothing wrong. In other words, in a criminal case, it happens all the time. Exactly. We'll argue off in a criminal case. You become an informant. But his allegation, and the allegations have to be accepted as true in the complaint, is that there's no basis for that whatsoever. He was never involved in drug trafficking, never involved in drugs. Then they're wrong. They're mistaken. The question is, is it reviewable? If they give a legitimate reason, and if it's bona fide, isn't that the end of the ballgame, whether they're right, wrong, or otherwise? Well, the question is, is it bona fide? Is it in good faith? All right. But what is the reason to think they didn't hear from the DEA what they say they heard from the DEA? We do, Your Honor. Did you present anything like that? That would have to be presented to court. There was no opportunity to do that, because all of these other things. Well, you presented the letter. You presented the letter from the consulate. Correct, Your Honor. But did you present anything from DEA that says, we never told them anything of the sort? No, Your Honor. No, Your Honor. But we do believe, and this is why evidentiary hearing is needed, because once there's a claim, there's a constitutional right implicated, and to answer your question, Judge Berzon, there's a claim here, and this is what the court said in Avaris, the D.C. Circuit said, the district court said in Allende, in L.E., all these cases where the courts have said, we can't just take the government's assertion as true once there's a constitutional right implicated. The U.S. citizen has a right to have that presented and analyzed in court. But I'm trying to sort of bring that down one level.   First of all, there's a practicality. The constitutional right implicated are sort of two, as you assert them. And implicated, I gather, you're saying doesn't have to be violated. It has to be implicated. And you're saying the two are essentially intimate association, i.e., he's married to this man, and with some statutory recognition of that, given the fact that she can petition for him. Correct. And second of all, and sort of that leading to some right to due process. And what I want to know is why can't any spouse who petitions for a relative or a mother or whatever and has the visa denied make the same claim and ask for an evidentiary hearing? Well, they have to be a constitutional claim asserted, first of all. I understand, but the assertion is a generic one, really. Well. It's generically, you know, I'm here, he's there, and he's my husband, and I have a right to be with him. That's the claim.  That claim has been rejected. We concede. There's no constitutional right to have your U.S. citizen live within the United States if the person is properly excludable. We don't make that claim. Well, the claim is to have that decision made in a procedurally regular way. In a fair way. Right. But that's still generic in terms of anybody who is a relative and is in the country and has a relative out of the country and wants to bring them in and wants the procedure. And the procedure we want is we want to know why you're saying that he's not eligible for X reason. Why isn't everybody going to be able to come into court and do that? Because there has to be an assertion that it wasn't bona fide. Now, you can't just hear there was a – in the complaint, which the factual allegations have to be accepted as true, there was an allegation that there was no bona fide basis whatsoever, that it was made up out of whole cloth because he refused to become an informant. And that – is that – just that assertion by itself is enough to get you an evidentiary hearing. An evidentiary hearing. Just like in – I mean, we have the Supreme Court in Kleindienst, we have the D.C. Circuit in Navarez saying this American public has a right to say – Well, Kleindienst never happened. It was sort of, you know, it was a possibility, but then it was followed through in some other case. Okay. So the D.C. Circuit in Navarez subsequently, the American public said we want to hear these people speak. Certainly, if there's a right of the public to say we have a right to have a court examine what the allegations are in court, then there's got to be the right of a U.S. citizen to say we have the right to have this allegation examined. What the D.C. Circuit did, they looked at the evidence and they actually said this isn't sufficient. These – these assertions that he's going to be a national security risk or he's in danger of the public are not sufficient. We have to – and we're not going to take these in-camera statements. We – under our system of justice here, the plaintiff has to be able to confront the evidence. That's what our country's all about. And every court that says once there is a constitutional right implicated, and that's the key issue, so it's not everybody who gets that, but once there is a constitutional right implicated, then there's got to be a limited evidentiary review of whether or not this bona fide reason is stated. And the courts have said it's not sufficient to just say national security risk or drug trafficker. That wouldn't be sufficient. And if the American public can go to court and say I want to hear this person talk, certainly a U.S. citizen separated – has their husband separated and their children's father separated has the right to come in and say let me look at these – what allegations do you have? We want to confront the evidence. And that's all that we're saying in district court. It's got to be bona fide. You have to look at the evidence and never – nothing was presented in this case. And I think it's really important to know – I mean to understand that nothing was ever presented to the district court saying here's even – not even the statement of the DEA agent, the alleged statement of the DEA agent, not the basis for that. Were there informants who said that? Were there people who accused them of drug trafficking? We don't know. Counsel, let me ask a question. Unlike the example that you gave us about the consular agent asking the woman to sleep with him or whatever, doesn't the fact that here the question was whether or not he would act as an informant, doesn't that tend to add some support or act as circumstantial evidence of the fact that they did have information, reliable information that this person was dealing in drugs or was drug trafficking? One may think that. I think it's a valid question, Your Honor. One may think that. Well, why would they just go up to anybody randomly and say become an informant, which I think is what your question really is. But the basis has to be bona fide. It has to be a legitimate assertion that they have reason to believe the drug trafficker. Let's say. Right. But doesn't that in essence establish the bona fide belief of the consular agent? I'm sorry, Your Honor. Say that again. Doesn't that establish the bona fide belief that, in fact, this person was acting as a drug trafficker? Well, there would have to be something presented to the court, and that's what the D.C. Circuit said in Abrisk, and that's what the district courts have said that examined it in the American Academy cases, the Allende. All those cases said we at least have to look at the evidence, what is the allegation, and let the individual respond to that. And, in fact, the DOS own cables say that. Right? What is the basis? There's an argument by the government that there is no waiver of sovereign immunity applicable here. What is the basis for your jurisdiction here, and what's the basis for finding a waiver of sovereign immunity? Okay. There's three bases, Your Honor. One is the allegation that they acted beyond the scope of their authority, and another Claim? Pardon? It's an APA claim? That is an APA claim, but you don't have to assert that in what the courts have said. That's what I'm trying to hear. So what would be the source of the waiver of sovereign immunity would be? The APA. Correct, Your Honor. Correct, Your Honor. But you don't have to assert that in the courts that have said that. And they didn't claim to assert it anyway.  But you could amend the complaint to assert it anyway. Correct. Correct. And the other is that when there's an allegation that their actions were constitutionally void, that would be also good around sovereign immunity. And the third is when you assert 1331 jurisdiction. Where does that come from? I mean, that would lead to waivers of sovereign immunity right and left. The – well, not – for a claim that doesn't assert monetary damages, I have to add that, a claim that doesn't assert monetary damages. And the Larson case we cite in our brief supports that, Your Honor. I'm assuming the individual as well. I'm sort of a – or several – at least one individual is still there, isn't he? Eric Cruz? Correct. Correct. Correct, Your Honor. But I do want to get back to the issue that I think is concerning the Court. Is it enough that they just say, we have evidence? And I think all the courts that have examined that have said no. When there's a constitutional right implicated, the right here, the right to marital association, the right to a due – to a decision with due process, then there has to be more. There has to be a limited review in the district court. I mean, there's something completely circular here, because your claim of – ultimately, as you say, it's really a procedural due process claim. It's not a substantive claim. Right. So – and your – the process that you claim you're due is to know what the basis was. What the basis – and to be able to challenge and to be able to, in a limited way, challenge it. Just like the Court did in – in Averesco and all those cases. They told you what the basis was. Pardon? They told you what it was. You just think they're wrong. No. The factual basis, Your Honor. Yeah. I mean, that's the first thing. You're looking beyond their bona fides. You want to prove that they are incorrect. They told you why he's – they have denied the petition. They told you because they think he is – they have reason to believe he's involved with drugs. And they told you the source of this information, that it came from the DEA. Now, you want to prove not only are they – you want to prove that they're more than just good faith or that they're incorrect. Well, not – I mean, to – Well, A, that it's a good faith because we believe, at least the assertion is, that this was all made up because he refused to be a drug informant. That's the assertion which has to be taken as true, that it was made up because it's – because of that. What does that record show about – there is some notion that he was a businessman and that he traveled back and forth a lot. Correct. Do we know what kind of businessman he was? Yeah. He was in the farming business. And if the facts could be developed and were allowed to be developed, but the court – just the court didn't allow that, what the agent said is, you know, what is all this money going back and forth in your – in your bank accounts? He's a farmer. The agent said, I think maybe a drug trafficker. And that's what it was based on. That's never been developed in this court because you never had that ability to do that. But what avarice is, and what the – this, of course, that examined this have said, is that even when there's assertion, you're a member of the Communist Party or you're a – your statements will endanger national security or you gave money to Hamas, that it's not enough just to say that, that you have to have the ability to confront the evidence in court when there's a U.S. citizen claiming a constitutional right. But there – there is at bottom a substantive claim where the United States citizens are saying, if he isn't what you say he is, we have a constitutional right to hear from him. Correct. Right? And here, that's not so. As you said, it isn't so. I mean, even if – even despite the right of intimate association, they – there's no constitutional right to have him come in the country because he's her husband. But so there's – so then you're back into this procedural issue, which then turns out to be the very lawsuit that – that's going – that you want to have here. But that's what – that's what American Academy did. They said, the allegation is he gave money to Hamas. Let's have an inventory here and see if that's true. If it's true, he's out of here. And that would be the same here. And again, there's some notion that if it's not true, he has a right to give the money to Hamas. If it's not true, what? He has the right to give the money to Hamas. No. No. The issue is, did he – did he not give money to Hamas? And if he did, clearly he's in – he's ineligible. Here, did he – did he not engage in drug trafficking? So you have this limited venture here to be able to prove that. Let me ask a hypothetical. Okay. Okay, go ahead. Okay. We've only got two minutes left, but go ahead. Let's take the element of we want you to be an informant out of this. One more time, Your Honor? Let's take the element of we want you to become an informant out of it. Okay. Let's just say they sent him a letter that says we have information, we have reason to believe you're a drug dealer or a – whatever the statutory terminology is. We have reason to believe you're involved in drug trafficking. And we got this information from the head of the DEA in Mexico. What then? Well, I would say, Your Honor, that the allegation that it was a pretext in order to get him to be an informant is a crucial element of this claim because we assert, therefore, it's not bona fide. But to answer your question, even in that situation, it would be similar to the allegation in American Academy that he gave money to Hamas. There the allegation was, well, let's have it. You've got a right implicated of U.S. citizens, a limited venture hearing to see if that's true or not. So it's more than just bona fide. They have to be – they have to have assessed your guy correctly. It's not enough that they have bona fide belief that it's true. They have to be, in fact, accurate, according to you. Well, in our claim, Your Honor, we wouldn't have to reach that because we assert it's false. Let me ask you my hypothetical. Hypothetical, yes, Your Honor. I do believe that it's just – But that really wouldn't meet the clienteen's derived standard because there would be a facially legitimate reason and you would have no reason to believe it wasn't bona fide, meaning – I mean, I'm taking bona fide to mean a pretext. Pretext. For bad faith or something other than wrong. The – whether there's – the courts are divided on this, Your Honor. In other words, whether or not you get to confront the evidence, even if it's – even if it's made in good faith, whether or not you get to confront the evidence at all. What case would say that you did? Well, American Academy would be that. American Academy looked at whether or not there was – he gave money to Hamas and they examined that evidence because there was a constitutional right of the U.S. citizens implicated. So – But because – as you've fled this case, we don't need to get to that. Correct. Because in our case, we don't need to – Because you're alleging a bad faith pretext. They never thought – they never believed it. I mean, our answer to Judge Silverman is your real claim is they never believed it, not that it wasn't true. They never believed it. If there wasn't any information, it was – it was – they didn't believe the people who said that. Correct, Your Honor. It was in order to prove it. But at some point, you said otherwise, as you've been standing here. So at some point, you said you wanted a hearing on whether there was anything to support it rather than on whether or not they believed it. Well, because in this case, they've never presented any evidence whatsoever that we have a right to at least see the allegations, the factual allegations. They've never presented any factual allegations. Thank you. Okay. We hear from the government. Good morning, Your Honor. Christopher Hollis representing the government. May it please the Court. Your Honor, this Court should affirm the lower court's holding that there's lack of subject matter jurisdiction here. There was a failure – the complaint failed to allege that there was a failure to follow regulations by the government. The complaint also failed to allege that there was a failure to provide a face of legitimate and bona fide reason. Neither of those allegations were made in the complaint with regard to the government. And this Court can affirm on that basis. I'm having trouble hearing you. I'm sorry. I'm sorry? I'm having trouble hearing you. The complaint failed in two respects, at least. It failed to allege that the government did not follow correct procedure in denying a visa. It also failed to allege that the government did not provide a facially legitimate and bona fide reason. Well, I thought allegedly it didn't have a – there was not a bona fide reason. The complaint never even mentioned the standard, Your Honor. Moreover, even if we get past that, the Doctrine of Constituent Non-Review. It says that, count one, the defendant suspended administrative action on the plaintiff's visa application. Is that true, by the way? That the application was not approved or the visa was not approved? It was denied. The application. There was no suspension, Your Honor. To which the plaintiffs were entitled on the basis of a reason that was not facially legitimate and bona fide. Excuse me. I stand corrected, Your Honor. Okay. Even if we get past that. We certainly just got past it, so go ahead. Thank you. The Constituent Non-Reviewability Doctrine bars review of any sort in this case. Opposing was just mentioned in several cases. Respectfully, I believe we've skipped a couple steps here. There was much mention made of Klein-Dienst v. Mandel. That case was decided on a waiver of inadmissibility issue. It was not decided on a visa issue. But there are a number of law-required cases that have proceeded in this fashion, no? Yes, there are, Your Honor. Yes. But it's the government's position that the facially legitimate and bona fide reason does not apply to a visa denial, but applies to a waiver of inadmissibility. Are there any such cases in this Court? I'm sorry? Are there any cases in this Court that proceed that way? The most recent case in this Court addressing a visa denial was Capistrano, and that did not address Klein-Dienst. It didn't address it, but it did do this. It actually helped the Constituent Non-Reviewability Doctrine preclude a review. But did it have the exception in it? Did it mention the exception as if it existed? The — Did it mention the existence of an exception? The Constituent Non-Reviewability Doctrine? Yes. Yes. An exception to it. Yes. As far as the constitutional claim? Yes. Your Honor, it didn't specify — it didn't go to that. It didn't reach that question. It held there was no subject matter jurisdiction, even in the case of a citizen petitioner and non-citizen visa applicants. That involved a U.S. citizen petitioner, not unlike this case. Furthermore, if we take a look at what happened in this case, it was — the visa was denied strictly according to procedure. The denial was given to the visa applicant. It was in March of 2003. There was a legal basis given, Section 212A2C, illicit trafficking in a controlled substance. And this basis was communicated to the visa applicant. This is all that's required under the regulations. You don't have to show your good faith? Good faith is not an exception to this? If we — I submit that the facially legitimate and bona fide reason standard is not applicable to a visa denial. Let's suppose that it is for the sake of discussion. No. It's — you must meet that standard, but that standard is met by supplying these three criteria. Having a legal basis — Close says his hypotheses were true, that he was a farmer businessman transporting things across — back and forth across the border. And with no more information than that, the DEA concluded that he was a drug dealer and — well, with no more information than that and not even believing he was a drug dealer, but just thinking that because he was a businessman transporting — going back and forth across the border, he would be useful as a drug informant, they essentially tried to bribe him into being a drug informant, but that they didn't really believe he was a drug dealer. The DEA — They thought he was in a position to be a drug informant, but not that he was a drug dealer. I'm sorry? They thought he was in a position to be a drug informant, but they didn't think he was a drug dealer. It's my contention, it's the government's contention, that this is — that decision is unreviewable. Now, it might be — Well, it's undiscoverable is your position. Now, we're never going to know whether that was true or not. Your position is not that if they said that, it would be fine. It's that we're never going to know. Yes, Your Honor. It's not reviewable. It's not — what's not reviewable is what might be — what he alleges is a lie, essentially. He's saying, you say that this was the reason, but I say it wasn't the reason because I was never a drug dealer, nobody could have thought I was a drug dealer, and you had reasons to lie and say I was a drug dealer, and I at least have — and I, a United States citizen who wanted to get my husband here, I at least have a right to know where you're getting this from. My position is that even the Department of State itself is not going to engage in second-guessing the factual determinations of this consular officer. Even if they're made up at a home cloth purposely? Under the consular nonreviewability doctrine, they're not going to be reviewed, Your Honor. And why would we want to have a rule like that? If we do have a rule like that, we're going to engage in second-guessing the determinations of consular officers whenever First Amendment constitutes a violation. No, you can obviously have an extreme — you can have a very narrow — I mean, and it appears we do. You know, although you're uncomfortable with the case law, it appears that there is case law that says that there are circumstances in which they — you can't get a factual inquiry just into rightness or wrongness if it's facially legitimate. But you can get a factual inquiry into whether they were essentially, purposely lying. Your Honor, first of all, Mandel, or Kleindiensthaber, we wish to call it, did not require that the government come forward with a facially legitimate and bona fide reason. There's no requirement for that. The government there did come forward with it. But there's no statement in Mandel that holds that the government must come forward with it. I understand, but you may be right about that, and it really was a case about the Attorney General anyway, not about consular officials. But lower courts, including this Court, have not read it that way. You — yes, Your Honor, that's accurate. There are some courts that have not read it that way. Most specifically, we've — American Academy of Religion has been referenced. That case is highly distinguishable. The court there explicitly noted that there were several — several circumstances that made it a unique case. First of all, while it did involve a visa denial, the decision to deny a visa there went beyond the consular officer determination. It went beyond that determination to the Department of State. There were also — there was some confusion over whether the denial basis was the endorse or espouse provision or the material support provision. There was a third — there was a third factor that made it a completely unique case there, and the court noted it, and that was the fact that there were public statements made by the Department of Homeland Security. So we have several entities, aside from the consular officer, that was engaged in making the determination in American Academy of Religion. And for that reason, that case is distinguishable. Well, except we were told yesterday in another case that that makes no difference at all, that, in fact, even though DHS does have, unlike the Secretary of State, the authority to revoke — to refuse visas and only to do so in accordance with law, that's also unreviewable. Your Honor, are you referring to Roduga? Yes. I think that that case might be distinguishable in that it's — that involves a nonimmigrant visa. This person has applied to come and live within the United States, and with regard to any due process rights that this person has as a person outside of the United States, they're completely minimal. You think there's a difference depending on whether somebody is applying to come for permanent residence or nonpermanent residence? I think there is a distinction to be noted versus an immigrant applicant versus a nonimmigrant applicant. Well, I thought you were going to say something else, which is that it wasn't — that the applicant there was outside the United States and was not an American citizen. Applicants outside the United States. But that wasn't what we were being told yesterday. I mean, the position that the government was taking was that DHS was — the secretary of DHS was in the same position as a consular officer with regard to reviewability in general. Your Honor, I can't speak to what happened yesterday. Okay. If we do go to the issue of due process, though, cases have held that aliens outside of the United States are not entitled to traditional notions of due process. And if they're entitled to any due process — That's not their claim. She's claiming I'm not outside the United States. I'm here an American citizen. I'm entitled to due process. Well, it's our position that she's not entitled to — she has no right. There's no entitlement to a visa. In this case. There's no right to an entitlement to a visa. She's not claiming an entitlement to a visa. She's claiming a right to regular process as to whether her husband's going to be able to come here. Yes, Your Honor. All right. So it doesn't help to go and misstate things. I mean, you have to deal with what she's actually arguing. Yes. Okay. My bad. She's arguing that she's been denied due process. Right. That sort of claim is not reviewable under the Constitutional Nonreviewability Doctrine. It's just — it's not reviewable. Cases have held that. There's Burifato. There is Centeno. Even when it involves a United States citizen's spouse. It's just gotten to the point where you're going to assume that it was reviewable and tell me why it wasn't a problem anyway, I thought. I thought we were proceeding down the line of argument at this point. I'm sorry. It's herding to the question of due process. So let's turn to it. Okay. Yes, Your Honor. Any due process that this — if there's any due process at issue, it's the due process of the visa applicant, not the petitioner. Because? Because the visa applicant is — the issue is with the visa. I think probably exhausted. Exhausted as Judge Benitez. Okay. Okay. Thank you very much, Mr. Hollis. Thank you, Your Honors. Mr. Vanderhut, I'll give you a minute. If you can keep it to a minute, please, we'd appreciate it. Thank you. Just a couple of brief points. One, I do want to emphasize that the claim here is limited. If it was, for instance, a statutory challenge only, it would not be reviewable like they misinterpreted the statute. We're not claiming that the person has a right there. It's only in the limited circumstances that we've set forward, that Kleindienst set forth, at-risk, et cetera. And I would like to refer the Court to the at-risk decision at page 1061. There, the Court does analyze what the type of review is and even the claims that must be reviewed in the evidence. It says a hallmark of our adversary system that we safeguard priority access to the evidence tended in support of a repressive court judgment. The openness — But ultimately, that can't be our position. Because ultimately, your position is that the question isn't whether there was evidence supported, it's whether they lied. Whether they lied when they said they believed it. The — I understand that the fact that there is no evidence might be evidence toward that end, but essentially, in the end, you need to allege and be able to prove that it wasn't bona fide, meaning it wasn't a good faith, they didn't believe it. They did not believe he was a drug trafficker. That is correct. Let me ask you this. Suppose — And that's what the evidentiary hearing should be about. Suppose this came up in summary judgment. They come forward with an affidavit of Mr. Cruz who says, I heard from the DEA that this guy is a drug dealer. And then they produce an affidavit from the DEA that says, I told Cruz that he's a drug dealer. Don't you — you lose, right? No, Your Honor. Because under abreast, under Allende, you have the right to at least examine those underlying statements. You get to prove under your construct, you get to prove not only that they had this information in good faith, but that they were — they correctly assessed, Mr. Monti. That the — let's say they were relying on a — somebody made some allegation. He's a — he's a businessman as — They have to be more than good faith. They've got to be — they've got to be correct. Well, they have to — there's twofold, Your Honor. They do have to believe that the information they have that he's a drug trafficker is — the allegations are made in good faith and reliable. There has to be some assessment of the information, underlying information. But the point is — If there is any underlying information. Here we don't even have that whatsoever. There's no — there's no evidence whatsoever presented. But — I'm sorry. But the point is that they could believe reasonably, rationally, in good faith, bona fidely believe that this gentleman was a drug trafficker. And they could be wrong. Is that true? They — they could be wrong. That is correct. But they would still be rejecting the application for a visa. Yeah. Based on bona fide, erroneous belief. Right? Correct. In our case, our allegation, and Judge Berzon, our allegation is that they do not in good faith believe that he is a drug trafficker. However — In Judge Silverman's hypothetical, they come in with a declaration, a summary judgment that says, in my experience, you know, I've been here for — as head of the DEA in the next city for a certain amount of time. And in my experience, these people who claim to be farmers going across the border are always selling drugs. And that's why I have reason to believe he's a drug salesman. We don't think that would be a bona fide reason. Correct your question. But why, if he believes that? Pardon? Because it has to be — because it has to be — it has to be rational. It has to be based on something. And that's what the Court said in — Maybe it's true. Maybe they found — and, indeed, you know, ten different times I have been faced with visas of people who — visa applications from people who are farmers and make this claim. And in every instance when I asked them to be a drug informant, it turned out they had — were terrifically good at doing that because they were really drug dealers. Your Honor, you would have to assume in order to be rational, because what does it mean to be faithfully legitimate and bona fide? It has to be at least a rational basis. So you couldn't assume that everybody who's a farmer is a drug trafficker. Not a farmer. A farmer who goes back and forth across the border. A farmer who goes back and forth across the border, as he does because he has business in both places. We believe the evidence does need to be examined. Thank you, gentlemen. The case will start again at 7 a.m. Good morning.
judges: Silverman, Berzon, Benitez